# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JOHN McGLOTHIN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>K. HARRINGTON, et al.,<br><br>　　　　Defendants. | 1:10cv00247 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Document 63) |

　　　　Plaintiff Michael John McGlothin ("Plaintiff"), a state prisoner proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 16, 2010. Plaintiff filed a Second Amended Complaint on June 13, 2011. On June 21, 2011, the Court found a cognizable Eighth Amendment claim against Defendants Steen, Torres, Castro and Jose.[1]

　　　　On April 16, 2013, Defendants filed this Motion for Summary Judgment.[2]

　　　　Plaintiff opposed the motion on May 23, 2013, and Defendants filed their reply on May 30, 2013. The motion is deemed submitted pursuant to Local Rule 230(l).

---

[1] On February 6, 2013, Defendants filed a Notice of the Death of Defendant J. Torres pursuant to Federal Rule of Civil Procedure 25(a). Plaintiff did not file a motion to substitute within 90 days of receiving the notice, and Defendant Torres was therefore dismissed on May 22, 2013.

[2] In Defendants' Notice of Motion dated April 16, 2013, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

## I.  LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

II.     **UNDISPUTED FACTS**

Plaintiff did not file his own separate statement of disputed facts, and although he indicates in his opposition which facts he disputes, he does not cite to any evidence to support his

3

dispute. Local Rule 260(b). In fact, Plaintiff does not provide *any* documentary evidence to support his contentions. Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified Second Amended Complaint ("SAC") and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

At the time of the events, Plaintiff was incarcerated at Kern Valley State Prison ("KVSP"). SAC, 1. At the time of the events, Defendant Steen was employed as a Correctional Sergeant at KVSP, and was Officer Torres' supervisor at the time Plaintiff was placed on contraband watch. Ex. D, Steen Decl. ¶ 1. Defendant Jose was also a Correctional Sergeant at KVSP. Ex. B, Jose Decl. ¶ 1. Defendant Castro was a Correctional Lieutenant at KVSP. Ex. C, Castro Decl. ¶ 2.

On May 12, 2009, at approximately 7:33 a.m., Officer Capello was performing his duties as a Transportation Officer and entered Facility A to process inmates scheduled for outside medical appointments. Plaintiff was in a large medical holding cell. Officer Capello asked Plaintiff to remove his clothing so that he could conduct an unclothed body search. As Plaintiff removed his right sock, Officer Capello noticed what appeared to be a round shaped object wrapped tightly in cellophane. Plaintiff immediately grabbed the object off the floor with his left hand. Officer Capello ordered Plaintiff to give him the object, but Plaintiff denied picking up any object. Plaintiff then turned away and put the object into his mouth. Officer Capello restrained Plaintiff and escorted him to a small holding cell. Ex. J., Rules Viol. Rep. May 12, 2009.

Officer Torres responded to Facility A Medical and was instructed to begin preparing Plaintiff for contraband watch. Ex. K, Crime/Incident Report May 12, 2009. During contraband watch, a series of correctional officers are assigned to watch the inmate continuously until the inmate is removed from contraband watch. Ex. N, Inmate Med. Serv. Policies & Procedures §

52050.23. These officers must sign a CDC 114-A, Inmate Segregation Record. Castro Decl. ¶ 5; Jose Decl. ¶ 5. The equipment used for contraband watch is kept in a sealed kit and includes a pair of black closed mitts. Steen Decl. ¶¶ 2-3. The mitts are similar to oven mitts and are used to limit an inmate's dexterity. The mitts have a loop which allows them to be secured to the waist restraints with a padlock. Steen Decl.¶ 3.

From his office, Defendant Steen observed Officer Torres open a sealed kit and place Plaintiff in all of the required contraband watch equipment. Steen Decl. ¶ 4

Plaintiff was initially placed on contraband watch on March 12, 2009. He was released from contraband watch on March 15, 2009, at approximately 2:00 p.m., when the contraband was recovered. Ex. L, CDC 114, March 12-15, 2009.

The CDC 114 documents the inmate's activities at 15-minute intervals as observed by the assigned correctional officer, and includes the names of the supervisory officers who perform routine checks. Inmate Med. Serv. Policies & Procedures § 52050.24. During Plaintiff's contraband watch, at least six correctional officers were assigned to watch him. In addition, at least five sergeants signed the CDC 114 as having check on Plaintiff. Nurses also came to Plaintiff's cell a number of times to administer medications. CDC 114, March 12-15, 2009.

Defendant Castro performed an inspection of the Contraband Surveillance Watch cells on May 12, 2009, in the early afternoon. He signed Plaintiff's CDC 114. Castro Decl. ¶ 5; CDC 114, March 12-15, 2009

Defendant Jose toured the Contraband Surveillance Watch area on May 13, 2009, at approximately 7:37 a.m. He signed Plaintiff's CDC 114. Jose Decl. ¶ 5; CDC 114, March 12-15, 2009.

Plaintiff's medical diagnoses include Hepatitis C. Ex E., Barnett Decl. ¶ 8.[3] Skin rashes commonly accompany Hepatitis C infection. Barnett Decl. ¶ 9. Plaintiff complained of recurrent skin rashes as early as 2005, and he was prescribed A&D Ointment as early as 2008. A&D Ointment effectively treats the dry skin symptoms. Barnett Decl. ¶ 10.

Plaintiff was seen by Dr. Shittu, in the Hepatitis C Clinic, on May 19, 2009, four days after he was released from Contraband Surveillance Watch. Ex. A, Shittu Decl. ¶ 3. During this routine follow-up visit, Dr. Shittu documented a minimal "macular" rash on his hands and prescribed Triamcinilone 1% Cream. Ex. M-3, Progress Note March 19, 2009. The term "macular" refers to a flat, slightly discolored, non-inflammatory region. Barnett Decl. ¶ 7. Plaintiff did not tell Dr. Shittu that the rash was caused by exposure to human feces during contraband watch. Shittu Decl. ¶ 5; Barnett Decl. ¶ 12. Dr. Shittu believes that the rash could have been caused by various medical conditions, with one possible cause being Plaintiff's Hepatitis C. Dr. Shittu did not diagnose the cause of the rash, which is not unusual for dermatitis of an unknown cause. Shittu Decl. ¶¶ 5-6.

The first mention in Plaintiff's medical record of the cause of the rash is on his March 20, 2009, Request for Health Care Services. In the request, Plaintiff wrote, "I need to be seen for the infection on my hand cause [sic] by potty watch." Ex. M-4, Health Care Services Request Form May 20, 2009; Barnett Decl. ¶ 16.

Plaintiff was seen by a doctor or nurse on March 22, 2009. No rash was noted and there is no indication that Plaintiff discussed a rash. Ex. M-5, Progress Note March 22, 2009.

Plaintiff had another medical appointment on May 26, 2009. Again, no rash was noted and there is no indication that Plaintiff discussed a rash. Ex. M-6, Progress Note May 26, 2009;

---

[3] B. Barnett, M.D., is physician in good standing with the State of California and is employed by CDCR as Chief Medical Officer. Barnett Decl. ¶¶ 1-2. He reviewed Plaintiff's medical records and offered his opinion as to the cause of Plaintiff's rash. Barnett Decl. ¶ 5.

Barnett Decl. ¶ 17.  Plaintiff does not complain about a rash on his hands in subsequent 2009 medical requests.  Barnett Decl. ¶ 17.

Plaintiff refilled the Triamcinolone cream in February 2010.  Barnett Decl. ¶ 18.

On April 18, 2010, Plaintiff submitted a Health Services Request Form in which he asked to be seen for a refill of his A&D Ointment because his "hands have broken out again [sic] with pilling off the skin and they are very sore."  Ex. M-7, Health Care Services Request Form April 18, 2010; Barnett Decl. ¶ 18.

On March 10, 2012, Plaintiff submitted a Health Care Services Request Form in which he requested a refill of Triamcinolone because his hands had broken out.  Ex. M-8, Health Care Services Request Form March 10, 2012; Barnett Decl. ¶ 18.

In a March 20, 2012, progress note, Plaintiff's doctor diagnosed xerosis (dry skin) on the right palm and recommended continuing the prescription for Triamcinolone.  Ex. M-9, Progress Note March 20, 2012; Barnett Decl. ¶ 19.

Dr. Barnett states that a rash that develops due to exposure to microscopic or invisible amounts of human feces is caused by the bacteria present in the feces.  Barnett Decl. ¶ 7.  Bacterial rashes are inflammatory with dramatic redness and usually manifest with papules, boils or ulcerations.  None of these conditions were reported as having appeared on Plaintiff's hands.  Based upon his medical training and experiences and his review of Plaintiff's records, Dr. Barnett opines that the rash Plaintiff complained of in 2009 was not caused by exposure to human feces.  Barnett Decl. ¶ 7.

### III. DISCUSSION

#### A. Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847.

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731.

Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Farmer, 511

U.S. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

      B.        Analysis

Defendants do not dispute Plaintiff's allegations in his verified SAC that the mitts were "tainted," "contaminated," "smell[ed] of human waste," and/or had human feces inside of them.  SAC, 3-5.  Defendants do not offer evidence as to whether the mitts were actually contaminated with human feces from a prior contraband watch, as Plaintiff contends, and the Court must therefore consider this fact undisputed.

There is also no dispute that Plaintiff's contraband watch lasted approximately three days.

      1.        *Whether Alleged Deprivation Was Sufficiently Serious*

Defendants first argue that the alleged deprivation,  i.e., that Plaintiff wore mitts tainted with human feces for approximately three days, was not an objectively sufficiently serious deprivation.

In determining whether a deprivation of a basic necessity is sufficiently serious to violate the Eighth Amendment, a court must consider "the circumstances, nature, and duration of the deprivation."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.2000).  The more basic the need, the shorter the time it can be withheld.  Id. (citing Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  "[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."  Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir.1995)

Viewing the evidence in the light most favorable to Plaintiff, there is no dispute that Plaintiff was provided with all of life's basic necessities during his three-day contraband watch. The CDC 114 log shows that Plaintiff received clothing, shelter, regular meals, water and medication. Plaintiff was able to sleep, stand and sit or a bench or on the floor. He was able to relieve himself when necessary and he makes no claims that his cell was unclean. When he complained of a cut on his finger, a supervisor was notified and a medical report was filed.

Given these overall conditions, the Court finds that Plaintiff's allegations, without more, do not constitute a sufficiently serious violation to rise to the level of an Eighth Amendment violation. See eg. Anderson v. County of Kern, 45 F.3d 1310, 1314–15 (9th Cir.), amended,75 F.3d 448 (1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); Harris v. Fleming, 839 F.2d 1232, 1235–36 (7th Cir.1988) (five days in a "filthy, roach-infested cell" did not violate the Eighth Amendment); Holloway v. Gunnell, 685 F.2d 150 (5th Cir.1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water); Uvalles v. Jacquez, 2013 WL 1283390, at *6 (N.D.Cal.2013) (granting summary judgment because conditions in contraband watch not sufficiently serious to violate Eighth Amendment); Wiley v. Kentucky Dept. of Corr., 2012 WL 5878678, at *5–6 (E.D.Ky.2012) (dismissing inmate's allegation that 2 week stay in a "dry cell" in September 2010 with no running water, no clean clothes or linens, and no flushable toilet for failure to state an Eighth Amendment claim upon which relief could be granted); Evans v. Fogg, 466 F. Supp. 949 (S.D.N.Y.1979) (no claim stated by prisoner confined for 24 hours in refuse strewn cell and for two days in flooded cell).

The conclusion that Plaintiff's allegations do not constitute a sufficiently serious violation is supported by the lack of resulting harm. First, Plaintiff only complains of a resulting rash on his hands. Second, Defendants have presented undisputed evidence that Plaintiff's rash was not the type that would likely result from contact with human feces, and was more likely a

symptom of Plaintiff's Hepatitis C.  Defendants have presented admissible evidence of Plaintiff's medical record, along with the declaration of his treating physician, Dr. Shittu, and the expert declaration of Dr. Barnett.  This evidence establishes that Plaintiff likely had a preexisting rash on his hands for which he received treatment prior to his contraband watch, and, more importantly, his rash did not have the characteristics of  a bacterial infection.

        Plaintiff attempts to dispute this evidence by simply stating that "the doctors have lied." Opp'n 6.  However, Plaintiff's bare assertion that a witness is lying is not sufficient to undermine the evidence.  Plaintiff must do more than attack the credibility of Defendants' evidence.  See National Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert . . . judgment.").  Moreover, Plaintiff is not qualified to opine as to the cause of his rash, and he puts forth no evidence that any medical profession told him that the rash was caused by human feces.

        2.     *Whether Defendants Knew of and Disregarded a Substantial Risk of Harm*

        Defendants submit declarations in which they state that Plaintiff never informed them that his mitts were contaminated.  Defendant Steen specifically states that Plaintiff did not tell him that he smelled an odor of human feces or that he thought the mitts were contaminated. Steen Decl. ¶ 18.  Defendants Jose and Castro state that they have no memory of Plaintiff or his allegations, and that if an inmate had made such an allegation, they would have remembered. Jose Decl. ¶¶ 6-7; Castro Decl. ¶¶ 6-8.

        Defendants also submit declarations from other officers who observed Plaintiff while on contraband watch.  The officers state that they do not recall any inmate ever complaining of dirty mitts.  Lafferty Decl. ¶¶ 4-5; Bailon Decl. ¶¶ 4-6; Gomez Decl. ¶¶ 3-5; Horton Decl. ¶¶ 3-5.

        In his verified SAC and opposition, however, Plaintiff states that he told Defendants Steen, Jose and Castro about the tainted mitts.  Plaintiff alleges that he told Defendant Steen, "as

soon as they pulled the mitts out of the bag," that they were "tainted from a previous use that [sic] smell of human waste." SAC, 3. Plaintiff alleges that Defendant Steen laughed at him. Plaintiff also alleges that he told Defendant Castro that he had been forced to wear a pair of tainted mitts and asked for new ones. He alleges that Defendant Castro refused and told him that "it's not her problem." SAC, 4. Plaintiff also told Defendant Jose that he had been forced to wear a pair of tainted mitts with human feces inside and asked for new ones. Defendant Jose refused and laughed at him. SAC, 5.

Plaintiff's own admissible testimony is sufficient to create a dispute of fact as to whether Defendants were aware of his complaints. However, this does not end the inquiry. Rather, Defendants must have known that Plaintiff faced a substantial risk of harm. Viewing the evidence in the light most favorable to Plaintiff, even if he told Defendants that the mitts were tainted, smelled, or had human feces inside, this is insufficient to support a finding that Plaintiff faced a *substantial* risk of *serious* harm. Plaintiff's allegations, without more, do not support a finding that Defendants knew that he faced a substantial risk of serious harm. Indeed, as explained above, Plaintiff did not suffer any injury as a result of the mitts.

Accordingly, there is no dispute as to any material fact and Defendants are entitled to summary judgment. The undisputed evidence, when viewed in a light most favorable to Plaintiff, does not establish an Eighth Amendment violation.

## IV. **FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court HEREBY RECOMMENDS that Defendants' Motion for Summary Judgment, filed on April 16, 2013, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." A party may file a reply to the objections within fourteen (14) days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   **September 29, 2013**                /s/ *Dennis L. Beck*
                                                           UNITED STATES MAGISTRATE JUDGE